UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| VENEZUELAN ASSOCIATION OF MASSACHUSETTS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, *et al.*, <br><br> Defendants. | No. 1:26-cv-13038-NMG |

**OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION FOR AN ADMINISTRATIVE STAY, OR, IN THE ALTERNATIVE, A STAY PENDING APPEAL**

On July 4, 2025, the President signed into law the H.R. 1 Reconciliation Act of 2025—known as the One Big Beautiful Bill Act ("H.R. 1")—which was a comprehensive legislative package that changed many existing laws and added new laws that affect many areas of government.  Among other things, H.R. 1 established a new framework for immigration fees that Congress directed the Department of Homeland Security ("DHS") to implement upon passage.  *See generally* 8 U.S.C. §§ 1802-1815.

Consistent with its statutory directives, on July 22, 2025, DHS published a notice in the Federal Register describing how it would implement many of the fees required by H.R. 1.  *See* 90 Fed. Reg. 34511.  On April 29, 2026, DHS published an Interim Final Rule codifying the implementation measures described in the previous notice in the Federal Register, which became effective May 29, 2026.  *See* 91 Fed. Reg. 22952.  More than two months after publication (and approximately one *year* after DHS published its notice in the Federal Register), Plaintiffs filed this lawsuit on July 1, 2026, seeking to challenge certain aspects of DHS's implementation of H.R. 1

under 5 U.S.C. § 705.  Doc. No. 1.  The following day, on July 2, 2026, Plaintiffs filed a Motion to Stay Agency Action under 5 U.S.C. § 705.  Doc. No. 11.

Approximately two weeks later, on July 15, 2026, Plaintiffs filed their "emergency" Motion for an Administrative Stay, or, in the Alternative, a Stay Pending Appeal.  Doc. No. 42. In their Motion for an Administrative Stay, Plaintiffs ask this Court to issue an order administratively staying the following pending this Court's resolution of their Motion for a Stay under 5 U.S.C. § 705: (1) the March 2026 Update to USCIS' website; (2) the provisions of the April 29, 2026 Interim Final Rule regarding the consequences for failure to pay the annual asylum fee; and (3) the July 2025 policy that limited the duration of TPS work authorizations issued to TPS holders who applied before H.R. 1 took effect.  *Id.*  The following day, on July 16, 2026, this Court ordered the government to file any opposition to Plaintiffs' Motion for Administrative Stay, Doc. No. 42, by 9:00 a.m. on July 20, 2025.  Doc. No. 45.

Defendants respectfully oppose Plaintiffs' Motion for an Administrative Stay.  First, administrative stays are traditionally used by a district court to stay *its own proceedings* pending resolution of an appeal or some other case or event.  *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket").  A court similarly possesses inherent authority "to stay a judgment that it issued" and—in some cases—"the judgment of another court."  Rachel Bayefsky, *Administrative Stays: Power and Procedure*, 97 Notre Dame L. Rev. 1941, 1962 (2022). That inherent authority does not, by contrast, include the power to stay or otherwise enjoin Executive agency action absent satisfaction of the traditional criteria for granting such equitable relief.  *See Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 318–19 (1999).  A district court may issue such relief pursuant to an appropriate statute or Federal Rule of

Civil Procedure 65—so long as the relevant criteria have been satisfied.  But it may not exercise its inherent powers in a way that avoids those requirements.  *See Dietz v. Bouldin*, 579 U.S. 40, 45 (2016) ("the exercise of an inherent power cannot be contrary to any express grant of or limitation on the district court's power contained in a rule or statute").

Second, the All Writs Act authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).  Thus, "[a]cting pursuant to [the All Writs Act], a federal court may issue an injunction as a means to preserve its jurisdiction."  *Rossello-Gonzalez v. Calderon-Serra*, 398 F.3d 1, 14 (1st Cir. 2004).  But there has been no contention in this case that an administrative stay must issue to preserve this Court's jurisdiction or ability to resolve Plaintiffs' Motion for Stay under 5 U.S.C. § 705.  And, in any event, a court "cannot use [the All Writs Act] to circumvent statutory requirements or otherwise binding procedural rules."  *Shoop v. Twyford*, 596 U.S. 811, 820 (2022).  The Court therefore may not stay or otherwise temporarily enjoin Executive agency action pursuant to the All Writs Act in a manner that excuses Plaintiffs from satisfying the requirements for issuing such relief under a relevant statute or rule (such as Rule 65).

At bottom, an administrative stay operates to "freeze legal proceedings until the court can rule on a party's request for expedited relief."  *United States v. Texas*, 144 S. Ct. 797, 798 (2024) (Barrett, J., concurring).  It should not serve to directly enjoin Executive agency action, which is what Plaintiffs' requested administrative stay would accomplish.

Regardless of a district court's ability to issue an administrative stay in certain circumstances, the Court should not do so here.  Plaintiffs assert that they would suffer irreparable harm if the Court does not issue an administrative stay.  But any alleged harm that would occur between (i) July 22, 2026 (the date Plaintiffs claim some undefined portion of their members will

lose their TPS-based work authorizations) and (ii) the Court's ruling on the Motion for Stay under 5 U.S.C. § 705 follows from Plaintiffs' decision to file their motion on the eve of July 22, 2026. DHS announced its implementation measures approximately *one year ago*, on July 22, 2025.  At minimum, even using March 2026 as the date by which Plaintiffs were on notice that some of their members could lose their TPS-based employment authorization to the extent it exceeded the one-year cap imposed by H.R. 1,[1] Plaintiffs had more than four months to seek relief with this Court. Yet, Plaintiffs did not file suit until three months later—and did not seek emergency relief until one week before some of their members' employment authorization were set to expire. Respectfully, the Court should not allow Plaintiffs to leverage their unfortunate timing into emergency relief.  The equities, therefore, weigh strongly in favor of allowing Defendants to brief—and the Court to decide—Plaintiffs' Motion for Stay in the ordinary course, without issuing any emergency relief in the interim.

If this Court is inclined to issue an administrative stay, it should be limited in scope and only apply to the policies that would allegedly result in adverse consequences to a portion of Plaintiffs' members as of July 22, 2026.  Plaintiffs have not provided any specific argument about the significance of the July 22, 2026, date as to the April Interim Final Rule implementing the consequences for failure to pay the annual asylum fee, which has been in effect since May 29, 2026.  And there is no legal justification for staying those provisions on an emergency basis before the parties have had an opportunity to brief and argue the stay motion.

---

[1] In their Motion for Stay, Plaintiffs concede that they were on notice of this potential consequence as early as March 2026.  Pl. Memo, ECF No. 12, p. 11.

Dated: July 20, 2026

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By:  */s/ Nicole M. O'Connor*
NICOLE M. O'CONNOR
Assistant U.S. Attorney
U.S. Attorney's Office
John Joseph Moakley U.S. Courthouse
One Courthouse Way, Suite 9200
Boston, Massachusetts 02210
(617) 748-3112
Nicole.O'Connor@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorneys of record by means of the Court's Electronic Case Filing system on July 20, 2026.

*/s/ Nicole M. O'Connor*
NICOLE M. O'CONNOR
Assistant U.S. Attorney