United States District Court
District of Massachusetts

| | |
|---|---|
| Venezuelan Association of Massachusetts, et al., ) ) ) | |
| Plaintiffs, ) | |
| ) v. ) | Civil Action No. 26-13038-NMG |
| ) United States Citizenship and ) Immigration Services, et al., ) ) | |
| Defendants. ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

Before the Court is plaintiffs' emergency motion for an administrative stay (Docket No. 42) pending resolution of the motion to stay agency action under 5 U.S.C. §705 (Docket No. 11). For the following reasons, that motion will be allowed, in part, and denied, in part.

I.    **Background**

This case is brought by membership-based organizations challenging several recent policies of defendant United States Customs and Immigrations Services ("defendant" or "USCIS"). Plaintiffs challenge 1) a July 22, 2025 Federal Register Notice ("the July 2025 Cap Policy"), 2) a March 2026 Update  to USCIS's website ("the March 2026 Update") and 3) portions of the April 29, 2026 interim final rule ("the April 2026 IFR"). Plaintiffs

-1-

represent two categories of alleged aggrieved parties, those holding Temporary Protected Status ("TPS") and those with pending applications for asylum.

The TPS program allows for foreign nationals to live and work in the United States while their home country is designated unsafe. 8 U.S.C. §1254a.  TPS holders are entitled to apply for employment authorization documents ("EADs").  Before the promulgation of the challenged policies, EADs were valid for the duration of the TPS status itself.  The 2025 Cap Policy and the April 2026 IFR retroactively apply a new expiration date for some EADs that will cause those TPS holders to lose their work authorization as early as July 22, 2026.

Noncitizens present in the United States may apply for asylum. 8 U.S.C. §1158.  While USCIS may reject applications that are improperly filed, federal law entitles applicants to an individualized adjudication of their application once it is accepted for filing. 8 C.F.R. §208.9(a).  The April 2026 IFR purports to implement an Annual Asylum Fee ("AAF") that requires applicants for asylum to pay a fee every year their application remains pending.  Failure to pay this fee will result in the rejection of the application, revocation of work authorization and initiation of removal proceedings against the applicant.

Moreover, most asylum applicants are eligible to apply for employment authorization after their asylum application has been

-2-

accepted for filing and pending for 150 days. 8 C.F.R. §208.7(a)(1)(i).  The April 2026 IFR removed a regulation requiring USCIS to adjudicate initial employment-authorization applications within 30 days of filing.

## II.  Discussion

Plaintiffs filed their motion to stay the challenged policies under 5 U.S.C. §705 on July 2, 2026.  Counsel for defendants filed a notice of appearance on July 15, 2026, and the Court scheduled a hearing on the plaintiffs' motion for July 30, 2026.  On July 15, 2026, plaintiffs filed this emergency motion to stay the challenged policies until the Court issues its final ruling.  Plaintiffs request that, if the Court denies this motion for an emergency stay, it nonetheless stay the challenged actions pending the appeal of that denial.

At least one other session of this District Court has issued an administrative stay to "permit time for briefing and deliberation." Afr. Cmtys. Together v. Noem, No. 26-CV-11201-ADB, 2026 WL 710666, at *1 (D. Mass. Mar. 13, 2026) (quoting United States v. Texas, 144 S. Ct. 797, 798 (2024) (Barrett, J., concurring)).  Such a stay reflects an initial judgment on the relative consequences facing both parties rather than a consideration of the merits. See id.  Although administrative stays are typically used in appellate courts, they have also been issued by district courts in cases seeking emergency relief

-3-

under the APA. <u>Nat'l Council of Nonprofits</u> v. <u>Off. of Mgmt. &</u> <u>Budget</u>, 763 F. Supp. 3d 13, 17 (D.D.C. 2025).

Here, the consequences faced by plaintiffs are potentially severe.  As noted by plaintiffs, many TPS holders will have their work authorizations expire on July 22, 2026, after which point they will be without legal authority to work in this country.  With respect to asylum applicants, the consequences for failure to pay the AAF may result in rejection of the asylum application and the initiation of removal proceedings. Defendants do not argue that they will be harmed by the issuance of the stay but the Court is nevertheless aware of the danger of interfering with the executive branch.

Having weighed those competing interests, the Court will allow the emergency motion with respect to those limited policies resulting in 1) the expiration of work authorization for TPS holders and 2) the imposition of penalties for failure to pay the AAF.  The government may continue to charge AAFs and need not abide by the previous 30-day deadline to review asylum applicants' initial employment-authorization applications.

**ORDER**

For the forgoing reasons, the motion for an emergency stay is **ALLOWED**, in part, and **DENIED**, in part.  The following portions of the 2025 Cap Policy, March 2026 Update and April 2026 IFR are hereby stayed:

1) retroactive application of EAD expiration deadlines, meaning that any EAD previously extended shall maintain its prior expiration date;

2) rejection of asylum applications for failure to pay the annual asylum application fee;

3) termination of work authorization of those who have failed to pay the annual asylum application fee; and

4) initiation of removal procedures against those who have failed to pay the annual asylum application fee.

This administrative stay will remain in effect until an Order of this Court with respect to plaintiffs' motion for a stay pursuant to 5 U.S.C. §705 (Docket No. 11), which will be issued no later than August 5, 2026.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
Senior United States District Judge

Dated: July 21, 2026