**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| VENEZUELAN ASSOCIATION OF MASSACHUSETTS, *et al.*, | |
| *Plaintiffs*, | |
| v. | Case No. 1:26-cv-13038 |
| U.S. CITIZENSHIP AND IMMIGRATION SERVICES, *et al.*, | |
| *Defendants*. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
EMERGENCY MOTION FOR A STAY PENDING APPEAL, OR, IN THE
ALTERNATIVE TO EXTEND ADMINISTRATIVE STAY**

**INTRODUCTION**

Plaintiffs challenge policies issued by United States Citizenship and Immigration Services (USCIS) that prematurely terminate work authorization for holders of Temporary Protected Status (TPS) and threatened to deny refugees the opportunity to seek asylum when they could not pay a new fee USCIS imposed on pending applications. The policies misapply a July 2025 law (H.R. 1) that imposed new fees for asylum applications and work permits.

On July 21, 2026 this Court administratively stayed the challenged policies based on the serious harm they would inflict on thousands of people, including TPS holders who would lose their jobs on July 22 if the policies remained in effect. Dkt. No. 47. On August 5, this Court stayed the asylum policy under 5 U.S.C. § 705, but it declined to stay the actions that cut off work authorization for TPS holders. Dkt. No. 53. As a result, the Court's administrative stay terminated.

Yesterday, Plaintiffs filed a notice of appeal and moved the First Circuit for an emergency stay pending appeal and an immediate administrative stay. Dkt. No. 54. Plaintiffs believed they had discharged their obligation to move for such relief in this court first. *See* Fed. R. App. P. 8(a)(1). This morning, however, the First Circuit denied Plaintiffs' emergency motion without prejudice, ruling that Plaintiffs did not make an adequate request to this Court for a stay pending appeal. *See* Order, *Venezuelan Ass'n of Mass. v. USCIS*, No. 26-1893 (1st Cir. Aug. 7, 2026).

Plaintiffs request a stay of the TPS-related policies pending appeal.[1] As this Court acknowledged when it administratively stayed those policies, many TPS holders—including

---

[1] Although Plaintiffs have appealed this Court's order denying their motion for a Section 705 Stay in part, this Court retains jurisdiction to address a motion for a stay pending appeal. *See Wolfe v. Clarke*, 718 F.3d 277, 281 n.3 (4th Cir. 2013) (district court retains jurisdiction to "address[] in the first instance a motion for stay pending appeal" despite notice of appeal from underlying order); *accord Matter of Miranne*, 852 F.2d 805, 806 (5th Cir. 1988).

Plaintiffs' members—cannot work and will lose the ability to support themselves in their families if the policies remain in effect. They will thus suffer irreparable harm absent a stay pending appeal. On the other hand, the government will not suffer significant harm from a stay.

In addition, Plaintiffs respectfully submit that they are likely to succeed on the merits of the appeal, and the balance of equities and public interest tip in their favor. In its Memorandum and Order granting in part and denying in part Plaintiffs' Stay Motion, the Court did not address Plaintiffs' claims that the March 2026 Update and April IFR and arbitrary and capricious. And in finding that the March 2026 Update and Cap Policy are procedurally valid, the Court relied on an argument (the "good cause" exception) not advanced by Defendants as to those policies. Plaintiffs are also likely to succeed on the merits of their remaining claims for the reasons described below.

If the Court does not grant a stay pending appeal, Plaintiffs request that the Court extend its previously granted administrative stay of the March Update, Cap Policy, and April IFR, to the extent they result in the termination of TPS work authorization, until the First Circuit rules on Plaintiffs' renewed emergency motion for that court to issue a stay pending appeal. *See* Dkt. No. 47 at 5.

Because of the irreparable harms TPS holders are already suffering absent relief, Plaintiffs respectfully request a ruling on this motion by 9 a.m. Monday, August 10, 2026. If the Court has not ruled by then, Plaintiffs intend to renew their motion with the First Circuit.

## BACKGROUND

For the relevant factual background, Plaintiffs respectfully refer the Court to their prior briefing. *See* Mem. in Supp. of Mot. for 5 U.S.C. § 705 Stay 4–12, Dkt. No. 15.

## LEGAL STANDARD

A party may obtain a stay pending appeal if it is "likely to succeed on the merits" of the

2

appeal and (2) likely to be "irreparably injured" absent a stay, so long as (3) a stay will not "substantially injure the other parties interested in the proceeding" and (4) the "public interest" favors a stay. *Nken v. Holder*, 556 U.S. 418, 434 (2009). Plaintiffs satisfy all four factors.

## I.    Plaintiffs Face Irreparable Harm Absent a Stay

Absent action from this Court, many of Plaintiffs' members will immediately lose their ability to work while they remain in TPS status. Because of the March Update, many of Plaintiffs' members relying on an automatic extension were told by their employers that their work authorization would end on July 22, 2026. Dkt. No. 12-1 ¶¶ 29-38; Dkt. No. 12-3 ¶ 23; Dkt. No. 12-4 ¶ 15; Dkt. No. 12-2 ¶ 23. As a result of the Cap Policy, other TPS holders received new EADs but they expire as soon as July 22, 2026, one year from the date their application was adjudicated, instead of the date their TPS status expires. Dkt. No. 12-1 ¶¶ 39–42.

The loss of employment authorization constitutes irreparable harm because it deprives noncitizens of the legal ability to work and pursue their occupations. *Bowser v. Noem*, No. 26-cv-10382, 2026 WL 555624, at *9 (D. Mass. Feb. 27, 2026); *Varniab v. Edlow*, No. 25-cv-10602, 2026 WL 485490, at *22-23 (N.D. Cal. Feb. 20, 2026); *Doe v. Noem*, 778 F. Supp. 3d 1151, 1164 (W.D. Wash. 2025) (collecting cases). Even if Plaintiffs were able to secure relief at some point in the future, there is substantial risk their jobs would no longer be available.

Plaintiffs' members will suffer additional irreparable harm as a direct result of being unable to work, such as loss of health care coverage, housing instability, and inability to support their U.S. citizen children. Dkt. No. 12-1 ¶¶ 33-42 (describing harms including loss of critical medical care for members and members' children and risk of default on mortgage for family home); Dkt. No. 12-3 ¶¶ 15-35; Dkt. No. 12-4 ¶¶ 17-18; Dkt. No. 12-2 ¶¶ 21, 23-25. These injuries cannot be remedied through a later damages award. *See, e.g.*, *AFGE v. Trump*, 139 F.4th 1020, 1040 (9th

Cir. 2025) (employees who would experience loss of healthcare and need to relocate from their homes after job loss would suffer irreparable harm), *stayed on other grounds*, 145 S. Ct. 2635 (2025); *E. Bay Sanctuary Covenant v. Garland*, 994 F.3d 962, 984 (9th Cir. 2020) (unrecoverable economic losses are irreparable).

## II.    A Stay Pending Appeal Would Cause Defendants Minimal Harm

When compared to the harms that will accrue to Plaintiffs' members in the absence of a stay, the Defendants would suffer little harm if the Court issues one. Defendants can demonstrate no harm from simply abiding by their preexisting policies: (1) providing an automatic 540-day extension to TPS holders who applied for that extension in early 2025 and have not received their EAD because of USCIS's delays, and (2) making all EADs USCIS issued to TPS holders from El Salvador, Ukraine, and Sudan who applied before H.R. 1 was passed effective throughout their TPS designation. *See Nat'l Educ. Ass'n v. Dep't of Educ.*, 779 F. Supp. 3d 149, 201 (D.N.H. 2025) (defendants would suffer little harm from a preliminary injunction that would merely maintain the status quo); *Guerrero Orellana v. Moniz*, 802 F. Supp. 3d 297, 313 (D. Mass. 2025) (preliminary injunction would return the parties to the status quo of providing bond hearings to noncitizens); *RAICES v. Noem*, No. 25-5243, 2025 U.S. App. LEXIS 19422, at *53 (D.C. Cir. Aug. 1, 2025) (denying government's request for a stay pending appeal because the district court's stay order "simply requires the government to adhere to mandatory statutory procedures and standards").

## III.    The Public Interest Favors a Stay

The public interest also favors a stay. First, "TPS holders are integrated into the U.S. communities in which they live" and "make significant economic contributions to their communities." *Nat'l TPS All. v. Noem*, 773 F. Supp. 3d 807, 840-42 (N.D. Cal.), *aff'd,* 150 F.4th 1000 (9th Cir. 2025), *stay granted on unspecified grounds*, 145 S. Ct. 2728 (2025). Loss of work

authorization would disrupt communities that depend on and benefit from the skilled labor of TPS holders. The broader economic consequences will be especially severe in industries that rely heavily on immigrant labor and already face substantial staffing shortages. *See* Melody Schreiber*, Trump Immigration Cuts Could Worsen U.S. Caregiver Shortage, Experts Say*, The Guardian (July 9, 2026), https://perma.cc/48E5-RAUY. And the accompanying loss of health care for TPS holders "increases health risks to the broader community" by causing "immigrants to forego medical care, such as diagnostic testing and vaccinations." *Nat'l TPS All.*, 773 F. Supp. 3d at 842.

Second, there is a strong "public interest" in requiring agencies to "compl[y] with the APA," including by considering public input on their actions through notice-and-comment, which Defendants failed to do. *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018).

For their part, Defendants can demonstrate no harm from simply abiding by their preexisting policies and the requirements of the APA. The challenged actions are unlawful, and "there is generally no public interest in the perpetuation of unlawful agency action." *New York v. Kennedy*, 155 F.4th 67, 77 (1st Cir. 2025).

## IV.    Plaintiffs Are Likely to Succeed on the Merits of Their Claims

### A.  Plaintiffs are Likely to Succeed on their Arbitrary and Capricious Claims

Plaintiffs are likely to succeed on their claims that the March 2026 Update and April 2026 IFR are arbitrary and capricious, claims this Court did not address in its August 5 decision.

The March 2026 Update is arbitrary and capricious because it failed to provide a "reasoned explanation" for departing from 8 C.F.R. § 274a.13(d)(1) and the notices USCIS had already issued to TPS holders providing the automatic 540-day extension. *See FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) ("An agency may not … simply disregard rules that are still on the books" and, when it changes course, "must show that there are good reasons for the new policy.").

Defendants also failed to consider obvious alternatives to the March 2026 Update, such as allowing people who applied for renewals before H.R. 1 to benefit from the full automatic extension or prospectively issuing additional automatic extensions. *See DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 28-29 (2020) (DHS acted arbitrarily and capriciously where it failed to consider less sweeping policy change); *Spirit Airlines, Inc. v. Dep't of Transp.*, 997 F.3d 1247, 1255 (D.C. Cir. 2021) (an agency must "consider responsible alternatives to its chosen policy and . . . give a reasoned explanation for its rejection of such alternatives").

In addition, in the March 2026 Update, Defendants disregarded the reliance interests of TPS holders and employers who depended on the 540-day automatic extension. *See Regents*, 591 U.S. at 30-33 (agencies must "assess whether there were reliance interests, determine whether they were significant, and weigh any such interests against competing policy concerns"); *Am. Hosp. Ass'n v. Kennedy*, 164 F.4th 28, 33 (1st Cir. 2026) (treatment of reliance interests is "a critical factor in the analysis of an arbitrary-and-capricious claim").

The April IFR also is arbitrary and capricious. USCIS failed to consider an "important aspect of the problem": the obvious interaction between its implementation of H.R. 1's one-year TPS EAD duration limit and USCIS's own processing times. *Ohio v. EPA*, 603 U.S. 279, 293 (2024). USCIS knew in promulgating the April 2026 IFR that it has a voluminous EAD renewal backlog.[2] But it failed to account for the effect of these delays on the operation of the rule.

The April 2026 IFR also rests on the false premise that "current TPS designation

---

[2] *See* USCIS, Immigration and Citizenship Data, *Form I-765, Application for Employment Authorization, Eligibility Category and Filing Type (Fiscal Year 2026, Quarter 1)* (June 12, 2026), https://perma.cc/FWN6-A4CF (backlog of 216,220 TPS EAD renewal applications as of December 31, 2025, processed at a rate of 6,227 applications per quarter); *see also* Dkt. No. 12-1 ¶ 31 (Plaintiff survey found that only 10% of Salvadoran TPS holders who applied to renew their EADs during the re-registration period had received new EADs by May 2026, more than fifteen months later).

6

timeframes do not place TPS beneficiaries and applicants at risk of experiencing gaps in employment authorization." *USCIS Immigration Fees and Related Procedures Required by H.R.1 Reconciliation Bill*, 91 Fed. Reg. 22952, 22961 (Apr. 29, 2026). This is plainly incorrect because the March Update and Cap Policy have already caused TPS holders to lose work authorization. At best, therefore, USCIS failed to engage with the predictable effects of its rule, in violation of the APA. *See Ohio*, 603 U.S. at 293. Further, USCIS failed to consider "responsible alternatives," such as issuing automatic extensions of less than one year to ensure work authorization for the full TPS designation period as required by the TPS statute. *Spirit Airlines*, 997 F.3d at 1255. Therefore, Plaintiffs are likely to succeed on the merits of their arbitrary and capricious claim as to the March 2026 Update and the April 2026 IFR.

### B. Defendants Never Relied on the Good Cause Exception to Justify Bypassing Notice and Comment for the March Update and the Cap Policy

In their stay motion, Plaintiffs argued that the March 2026 Update and Cap Policy are legislative rules that were issued without notice and comment. *N.H. Hosp. Ass'n v. Azar*, 887 F.3d 62, 70 (1st Cir. 2018). In its August 5, 2026 Memorandum and Order, this Court did not disagree that the Cap Policy and March Update are legislative rules; instead, it found that there was "good cause" to forgo notice and comment for the Cap Policy. Dkt. No. 53 at 7-8. But Defendants' brief did not argue that the March Update and Cap Policy were exempt from notice and comment, let alone claim that the "good cause" exception applied to those policies. Defendants made that argument only as to the April 2026 IFR. *See* Dkt. No. 48. That was for good reason. "[T]he APA specifically requires that when an agency relies on the good cause exception it must 'incorporate[ ] the finding and a brief statement of reasons therefor in the rules issued.'" *Levesque v. Block*, 723 F.2d 175, 179 (1st Cir. 1983) (quoting 5 U.S.C. § 553(b)(4)(B)). Yet, in publishing the March 2026 Update and disclosing the Cap Policy, USCIS never even mentioned the good cause exception.

Relying on out-of-circuit precedent, this Court nonetheless held the "good cause" standard was satisfied because the Cap Policy and March Update "merely restate[] the statute." Dkt. No. 53 at 7. But this Court recognized that the statute "does not clearly mandate retroactive application." *Id.* at 8. Because the Cap Policy and March Update *do* mandate retroactive application, they plainly do more than "restate the statute" and therefore are legislative rules. *See N.H. Hosp.*, 887 F.3d at 71-72.

### C.  The March 2026 Update Is Impermissibly Retroactive

The March 2026 Update is impermissibly retroactive because it purports to take away work authorization extensions that took effect a year before the March 2026 Update was published. It does so even though USCIS affirmed in October 2025—months *after* passage of H.R. 1—that those extensions remained valid so as not to "retroactively affect those [noncitizens] who have already timely and properly filed a renewal EAD application before October 30, 2025." *Removal of the Automatic Extension of Employment Authorization Documents*, 90 Fed. Reg. 48799, 48811-12 (Oct. 30, 2025) (revising 8 C.F.R. § 274a.13(d)(1)).

Although this Court agreed that USCIS cannot apply H.R. 1 retroactively, it concluded that shortening TPS holders' work authorizations does not constitute a retroactive application. Dkt. No. 53 at 8-9. It drew a distinction between the rule in *Arevalo v. Ashcroft*, 344 F.3d 1, 10-11, 14 (1st Cir. 2003), in which USCIS's predecessor impermissibly applied a new statute to deny a right "outright," and the actions here, which only "limit the maximum *duration* for which an individual may enjoy that right." *Id.* (emphasis added). But an administrative action that shortens a right's duration still "impair[s]" that right and changes its "legal consequences," even if it does not revoke the whole thing. *Arevalo*, 344 F.3d at 10-11, 14; *cf. Landgraf v. USI Film Prods.*, 511 U.S. 244, 283 (1994) (law that merely changes "[t]he *extent* of a party's liability" has a retroactive effect).

8

"[C]onsiderations of fair notice, reasonable reliance, and settled expectations" confirm as much here. *Arevalo*, 344 F.3d at 11. Immigrants promised the right to work for 18 months take jobs, rent apartments, and make financial plans they would have changed if they knew their time was shorter. *See* Dkt. No. 12-1 ¶ 38; Dkt. No. 12-2 ¶ 25; Dkt. No. 12-3 ¶¶ 11, 33; Dkt. No. 12-4 ¶ 18. By cutting off these people's right to work months early, USCIS disrupts the "settled expectations" of TPS holders and their employers. *Arevalo*, 344 F.3d at 11; *see also Uranga v. USCIS*, 490 F. Supp. 3d 86, 107-08 (D.D.C. 2020) (USCIS could not apply new rule to refuse to grant interim work authorization to person who applied for work permit before regulation's effective date).

This Court also suggested that the March Update was not impermissibly retroactive because "the policy concerns a future expiration date." Dkt. No. 53 at 9. By that logic, though, the law in *Arevalo* was not retroactive because it concerned a future grant of discretionary relief. But when an agency wants to "impair" pre-existing rights, it must identify clear support in a statute, regardless of when it plans to impair them. *Arevalo*, 344 F.3d at 10-11. USCIS identified no such support in H.R. 1.

### D. The Cap Policy Is Impermissibly Retroactive

Like the March Update, the Cap Policy also attaches new legal consequences to EAD applications filed before H.R. 1 was enacted. When USCIS extended TPS for El Salvador, Sudan, and Ukraine, in January 2025, 8 C.F.R. § 244.12(a) entitled TPS holders to an EAD that was valid throughout the extension period. Until revised in the April 2026 IFR, 8 C.F.R. § 244.12(a) provided that: "[u]pon approval of an application for [TPS], USCIS shall grant an employment authorization document valid during the initial period of the foreign state's designation (and any extensions of such period)." *See also, e.g.*, *Extension of the Designation of El Salvador for Temporary Protected Status*, 90 Fed. Reg. 5953, 5954 (Jan. 17, 2025). After publishing the July 2025 FRN, however,

9

USCIS quietly reversed course and began capping new EADs at one year from the date of adjudication--in violation of the version of 8 C.F.R. § 244.12(a) then in effect—even if the TPS holder applied for an EAD long before H.R. 1 was enacted. 91 Fed. Reg. at 22960 n.75; *see also* Dkt. No. 12-1 ¶¶ 39-42. As a result, TPS holders who applied for EADs before that date face premature loss of employment authorization months before then-existing regulations guaranteed. The Cap Policy is thus impermissibly retroactive as well. *See Arevalo*, 344 F.3d at 14.

**E.  The Cap Policy, March 2026 Update, and April 2026 IFR Violate the TPS Statute**

The Cap Policy, March 2026 Update, and April 2026 IFR are contrary to the TPS statute because they inevitably cause gaps in TPS holders' work authorization, violating the statute's employment-authorization mandate. *See* 8 U.S.C. § 1254a(a)(1)-(2). H.R. 1 did not repeal that mandate. Rather, as USCIS concedes, it limits only "how long employment authorization may remain valid in any single grant or renewal." 91 Fed. Reg. at 22961.

This Court was "unconvinced by the government's interpretation of the TPS statute." Dkt. No. 53 at 10. Nevertheless, this Court held that the "possibility that implementation of H.R. 1 will create a gap in employment authorization is insufficient to find" that the Cap Policy is unlawful because the government could decide to, for example, issue a future automatic extension of expiring EADs. *Id.* But the April 2026 IFR amends 8 C.F.R. § 244.12(a) to require TPS holders to "obtain a renewal to continue employment authorization" upon expiration of their "1 year" EAD. *See* 91 Fed. Reg. at 22972. USCIS said in the April 2026 IFR that it did not need to ensure that TPS holders remain work-authorized throughout their TPS designation because the statute no longer required it to do so. *Id*. at 22961. USCIS's decision to cut off work authorizations without taking any action to prevent gaps rests in part on its legal conclusion that USCIS has no obligation to do so. That legal error—which underpins all three policies—justifies a stay. *See Calcutt v. FDIC*, 598 U.S. 623, 629 (2023) ("[T]he function of the reviewing court ends when an [agency's]

error of law is laid bare.").

USCIS suggested that TPS holders could avoid losing authorization if they simply "file timely renewals." 91 Fed. Reg. at 22961. But—per USCIS's own reporting and Plaintiffs' experience—many EAD renewals take more than 12 months to process. Yet, the IFR does not adopt any of the methods USCIS previously used, including an automatic extension such as the one the Court suggested in its August 5, 2026 Memorandum and Order.

### V.    In the Alternative the Court Should Extend Its Previous Administrative Stay

In the alternative, Plaintiffs request that the Court extend its previously granted administrative stay of the March Update, Cap Policy, and April IFR, to the extent they result in the termination of TPS work authorization, until the First Circuit rules on Plaintiffs' renewed emergency motion for that court to issue a stay pending appeal. In issuing its prior administrative stay, the Court recognized that Plaintiffs' members would face serious harm due to the loss of work authorization resulting from the challenged policies. Dkt. No. 47 at 4. The same reasoning favors extending the prior administrative stay to "minimize harm" while the First Circuit deliberates. *United States v. Texas*, 144 S. Ct. 797, 799 (2024) (Barrett, J., concurring) (explaining that administrative stays do not reflect an assessment of the merits); *accord* Dkt. No. 47 at 3.

### CONCLUSION

For the foregoing reasons, the Court should stay the Cap Policy, March 2026 Update, and the April 2026 IFR pending appeal. In the alternative, the Court should extend its prior administrative stay until the First Circuit rules on Plaintiffs' renewed emergency motion.

Dated August 7, 2026                          Respectfully submitted,

Conchita Cruz* (NY Bar No. 5550769)          */s/ Jennie L. Kneedler*
Jessica Hanson (MA Bar. No. 714653; CA       Jennie L. Kneedler* (DC Bar No. 500261)
Bar No. 313247)                              Sean Ouellette (MA Bar No. 697559)

11

Marcela X. Johnson* (GA Bar No. 328871)
**ASYLUM SEEKER ADVOCACY
PROJECT**
228 Park Ave. S. #84810
New York, NY 10003-1502
Telephone: (646) 647-6779
conchita.cruz@asaptogether.org
jess.hanson@asaptogether.org
marcela.johnson@asaptogether.org


Jessica Karp Bansal* (CA Bar No. 277347)
**NATIONAL DAY LABORER
ORGANIZING NETWORK**
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Telephone: (626) 214-5689
jessica@ndlon.org

Steven Y. Bressler* (DC Bar No. 482492)
Brian Netter* (DC Bar No. 979362)
**DEMOCRACY FORWARD
FOUNDATION**
P.O. Box 34553
Washington, DC 20043
Phone: (202) 448-9090
souellette@democracyforward.org
jkneedler@democracyforward.org
sbressler@democracyforward.org
bnetter@democracyforward.org

*Counsel for Plaintiffs*

\* Admitted *pro hac vice*

12

## CERTIFICATE OF SERVICE

I hereby certify that on this August 7, 2026, I caused the foregoing to be electronically filed with the clerk of the court for the U.S. District Court for the District of Massachusetts by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record, a true and correct copy of the foregoing instrument and all attachments.


*/s/ Jennie L. Kneedler*
Jennie L. Kneedler

13